**Mitra Shahri**, OSB No. 021100
mitra@unlawfultermination.com
**Daniel K. Le Roux**, OSB No. 085510
dan@unlawfultermination.com
MITRA LAW GROUP
Portland, Oregon 97201
Tel (503) 243-4545
Fax (503) 243-4546
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NEIL DELPLANCHE,<br><br>        Plaintiff,<br><br>   v.<br><br>WINDOW PRODUCTS, INC. *d/b/a* CASCADE WINDOWS; DAVID LOVE; ALICE NORRIS; and RYAN HOPKINSON,<br><br>        Defendants. | Case No.  3:16-cv-02319<br><br>**COMPLAINT**<br><br>Federal Employment Claims (28 U.S.C. § 1331)<br><br>1. Equal Pay Act Violation 29 U.S.C § 206(d)<br>2. FLSA Retaliation 29 U.S.C. § 215(a)(3)<br>3. Sex Discrimination ORS 659A.030(1)(a-b)<br>4. Retaliation for Reporting Unlawful Conduct/Whistleblowing ORS 659A.199<br>5. Retaliation ORS 659A.030(1)(f)<br>6. Aiding, Abetting, or Inciting ORS 659A.030(1)(g)<br><br>**DEMAND FOR JURY TRIAL** |

### I.     INTRODUCTION

1.     Plaintiff Neil Delplanche worked for Defendant Window Products, Inc. *d/b/a* Cascade Windows at its Tualatin, Oregon location from on or about November 5, 2014 until he was unlawfully terminated on August 19, 2015.

2. Plaintiff brings the instant lawsuit to vindicate his employment-related rights under the Fair Labor Standards Act/Equal Pay Act 29 U.S.C. § 206(d) and related claims arising under state law after he was unlawfully terminated.

3. Plaintiff seeks economic damages, non-economic damages, liquidated damages, punitive damages, equitable relief, attorney fees, and litigation expenses/costs, including expert witness fees and costs.

## II.     JURISDICTION, VENUE AND PARTIES

4. At all material times, Defendant WINDOW PRODUCTS, INC. *d/b/a* CASCADE WINDOWS ("CASCADE"), is a Washington Corporation with its principal place of business in the State of Washington, licensed to conduct and conducting business in the State of Oregon.

5. At all material times, Defendant DAVID LOVE ("LOVE") was an employee or otherwise an agent of Defendant CASCADE acting within the course of scope and his agency unless otherwise alleged. LOVE was the President of CASCADE with supervisory authority over Plaintiff. At all material times, Defendant LOVE was a resident of the State of Washington. Plaintiff is informed and believes that Defendant LOVE is currently a resident of the State of South Carolina.

6. At all material times, Defendant ALICE NORRIS ("NORRIS") was an employee or otherwise an agent of Defendant CASCADE acting within the course and scope of her agency unless otherwise alleged. NORRIS was the V.P. of Human Resources at CASCADE and Plaintiff's direct supervisor. At all material times, Defendant NORRIS was and is a resident of the State of Washington.

/ / /

7. At all material times, Defendant RYAN HOPKINSON ("HOPKINSON") was an employee or otherwise an agent of Defendant CASCADE acting within the course and scope of his agency unless otherwise alleged. HOPKINSON was a Human Resources Director at CASCADE with supervisory authority over Plaintiff. At all material times, Defendant HOPKINSON was and is a resident of the State of Washington.

8. At all material times, Plaintiff was and is a resident of the State of Oregon, County of Multnomah.

9. Jurisdiction is proper with this Court under 28 U.S.C. § 1331 because this case involves a substantial question of Federal law. Jurisdiction is proper with this Court over Plaintiff's companion state law employment claims under 28 U.S.C. § 1367(a). Alternatively, jurisdiction with this Court is proper due to complete diversity under 28 U.S.C. § 1332(a)(1).

10. Venue is proper with the District of Oregon, Portland Division, pursuant to 28 U.S.C. § 1391(b)(2), Local Rule 3.2(a)(1), because all or substantially all of Plaintiff's claims arose in this judicial district in Washington County.

### III. STATEMENT OF FACTS

11. Plaintiff has a background in human resources spanning approximately 20 years. Plaintiff holds a B.S. in Business Administration along with several human resources related certifications.

12. On or about October 22, 2014, Plaintiff was offered the position of Human Resources Business Partner ("HR Partner") at CASCADE's plant located in Tualatin, Oregon. The position was advertised and offered at an annual salary of $55,000.

/ / /

13. During the interview, NORRIS intentionally misled Plaintiff to believe that the four new HR Partner positions created companywide all had to have the same starting salary of $55,000. However, NORRIS told Plaintiff that she was very impressed with his background and agreed to adjust his salary to $60,000 by giving him a $5,000 raise after the completion of his 90-day probationary period.

14. In reliance on the information and promises made during his interview, Plaintiff accepted the position and stopped looking for other opportunities.

15. On November 5, 2014, Plaintiff began working at the Tualatin plant as its onsite HR Partner at the annual starting salary of $55,000.

16. In or about January of 2015, as part of his job, Plaintiff interviewed and screened several applicants for hire. Plaintiff discussed the potential qualified hires with the Shipping Supervisor, David Liles ("Liles") and the Plant Manager, Michael Schmitt ("Schmitt").

17. When Liles found out that one of the potential qualified hires was of Samoan ancestry, he told Plaintiff not to hire Samoans because they are "*all lazy and smoke pot*." Plaintiff was shocked by the comment and told him that hiring decisions could not be made based upon racial stereotypes. Schmitt then backed Liles and commented that he had worked with many Samoans and they were "*all lazy*."

18. Concerned, Plaintiff contacted his direct supervisor NORRIS and reported Liles and Schmitt's racially discriminatory directions. Plaintiff told NORRIS that he could not follow their directions because it was illegal to do so. NORRIS agreed and told Plaintiff to move forward with the hiring.

19. Plaintiff then suggested that all mangers receive diversity orientation training and

a record be made of Liles and Schmitt's attendance to avoid any future problems. NORRIS was opposed to any type of training that would bring attention to the issue. Plaintiff passionately advocated for the need for such training but ultimately dropped the subject when NORRIS became angry at him for arguing with her.

20.     Thereafter, Plaintiff successfully completed his 90-day probationary period. Sometime in late January/early February of 2015, after Plaintiff realized that his paycheck did not reflect the promised raise, he contacted NORRIS. He asked NORRIS when he could expect to see the $5,000 promised raise reflected in his paychecks.

21.     NORRIS claimed she did not recall making such a promise during the interview. NORRIS then sarcastically told Plaintiff that it would be discriminatory to give him a raise and not the other HR Partners since they all had to be treated the same.

22.     In or about May of 2015, Plaintiff again met with Liles and Schmitt about an open position that needed to be filled. The two again instructed Plaintiff not to hire any more Samoans because they are "*all lazy*."

23.     Plaintiff did not hold back this time and immediately warned them that it was illegal for CASCADE to not hire a qualified applicant based on his or her race or ethnicity. Plaintiff then invited the two to directly speak with NORRIS and informed them that she was well aware of their prior racist comments and had backed Plaintiff. Liles and Schmitt seemed visibility upset at Plaintiff.

24.     Plaintiff then reached out to NORRIS and advised her of the situation in case Liles and Schmitt decided to contact her. NORRIS admitted that the issue was a problem for CASCADE if it somehow got out and promised Plaintiff to look into it. Much to Plaintiff's

amazement, NORRIS continued to resist the idea of any type of diversity training at the plant.

25. In an attempt to make sure that Liles and Schmitt never made such discriminatory comments again, Plaintiff also advised Hank Serat ("Serat"), the Continuous Improvement Director, of the situation since he appeared to have some influence on Liles and Schmitt.

26. Plaintiff is informed and on that basis alleges that neither Liles nor Schmitt were ever given diversity training or any discipline for their discriminatory hiring practices.

27. As time passed, Plaintiff also began to have serious concerns about CASCADE's violation of Oregon workers' compensation laws. Plaintiff soon learned that CASCADE was systematically terminating employees that reported on-the-job injuries.

28. On several occasions, Plaintiff received incident reports from employees reporting on-the-job injuries. Plaintiff took each incident report to Schmitt and informed him of the situation. Plaintiff then advised Schmitt that the injured worker had to be off work for a while and/or would need a modified duty position. Schmitt consistently told Plaintiff that injured workers were "*lying*" or "*faking*" their injuries and they needed to be fired.

29. Plaintiff strongly opposed the termination of injured workers and each time admonished Schmitt that it was illegal to terminate an employee for getting injured on-the-job.

30. In response, Schmitt rationalized that at CASCADE's Washington plants it was common practice to terminate injured workers and that he believed it was legal to do so in Washington. Plaintiff was dumbfounded and confirmed that it was illegal to do so in Oregon.

31. Nevertheless, Plaintiff noticed that the injured workers were being unfairly scrutinized, treated differently than uninjured workers and were eventually terminated for what appeared to be pretextual reasons.

32. Thereafter, Plaintiff reported the discriminatory terminations to NORRIS to no avail. As a result, Plaintiff refused to be involved in the termination of workers that reported on-the-job injuries. Plaintiff's objections to such illegal terminations caused Schmitt to become extremely and openly hostile toward Plaintiff.

33. Plaintiff also found himself regularly debating with Phil Heide ("Heide"), an OSHA Specialist at CASCADE, about what constituted an on-the-job injury for Oregon workers' compensation purposes. Heide argued that most injuries were just "first-aid" and did not need to be recorded as on-the-job injuries for OSHA purposes.

34. Plaintiff repeatedly advised Heide that all injuries that occurred in the workplace had to be properly recorded no matter how minor and that it was against OSHA regulations not to record them. Heide resisted Plaintiff's efforts and continued not to record on-the-job injuries that did not require hospitalization or immediate outside medical attention.

35. In addition, during Plaintiff's time at the Tualatin plant, a number of employees came to Plaintiff and complained that they were working too many hours and were not being paid properly. For example, employees were regularly assigned to work more than thirteen hours in one day in violation of Oregon law.

36. Plaintiff investigated the issue and learned that CASCADE had a practice of altering employee's reported hours to make it appear that they were in compliance with the law which also resulted in the employee being docked wages for overtime. Plaintiff immediately reported his concerns to Schmitt and warned him that the practice was illegal and needed to stop.

37. During the same general time frame, another employee complained to Plaintiff that he had worked 17 hours in one day and that Liles had altered his time records to make it

look like the employee had worked two-eight (8) hour days resulting in the employee losing overtime pay.

38.     Plaintiff confronted Liles and explained to him that it was illegal to alter an employee's time records and to fail to pay the employee properly for all hours worked. Plaintiff told Liles that the employee had to be paid overtime which caused Liles to leave in anger. Plaintiff was shocked to learn that a short time later the employee that had complained to him about his time records being altered was summarily terminated.

39.     Plaintiff discussed the situation and his concerns of retaliatory termination of the employee with NORRIS who claimed that Liles did not need to clear his decision to fire an employee with Plaintiff.  NORRIS then advised Plaintiff that if he wanted to have a career at CASCADE, Plaintiff needed to loosen up and learn how to make friends and not enemies. Plaintiff considered the comment a veiled threat and a warning to keep his mouth shut.

40.     In or about spring of 2015, Plaintiff learned that Lisa Weber, a female HR partner that had been recently hired to work at another CASCADE plant who had less experience and seniority than him was receiving a starting annual salary of $65,000.  He also soon learned that the other female HR Partners had all started at a much higher annual salary than him.

41.     Plaintiff had access to all payroll records as an HR Partner so he confirmed what he had learned in passing and realized that NORRIS had lied to him during their interview and no one other than him had started at such a low annual salary.  Plaintiff was the only male HR Partner in the company.

42.     In or about May of 2015, Plaintiff attended a management meeting.  At the meeting Schmitt complemented and thanked Plaintiff for not reporting an earlier OSHA violation

and other issues regarding smoking on the premises in his plant to NORRIS.

43.     Plaintiff for the first time felt comfortable at the meeting with Schmitt to complain about his discriminatory pay.  Plaintiff advised Schmitt that he had confirmed from the payroll that the female HR Partners were all earning substantially more income than he was.  Schmitt agreed to speak with NORRIS on Plaintiff's behalf.

44.     In or about June of 2015, after hearing nothing back from anyone about his complaint of sex-based pay inequality, Plaintiff raised the issue with Schmitt again in a meeting.  Schmitt admitted that he had not heard back from NORRIS since reporting Plaintiff's concerns.  Nevertheless, he assured Plaintiff that CASCADE was working on it.

45.     In or about late June of 2015, Plaintiff received a complaint about a hostile and unsafe work environment from a female employee. The employee complained that she was frightened by employees throwing chairs across the floor and other employees acting in a hostile manner, such as angrily cursing.

46.     Plaintiff promptly communicated the employee's complaint to NORRIS and also backed up the employee's complaint since he had personally witnessed a number of issues at the Tualatin plant that posed health and safety issues for employees and violated OSHA regulations.

47.     In an effort to emphasize the seriousness of the safety issues at the Tualatin plant, Plaintiff compared the running of the Tualatin plant to a "truck stop."  Plaintiff was frustrated and told NORRIS that no one in the company seemed to care about laws.

48.     Plaintiff then also brought up his own unequal pay issue.  NORRIS first denied that Plaintiff was the lowest paid HR Partner but after Plaintiff told her that he had personally confirmed everyone's salary from the payroll, she then claimed that they were more experienced.

Plaintiff disagreed and accused NORRIS of discriminating in favor of women and requested an investigation be conducted into his complaint. Plaintiff then asked for a merit-based raise.

49. In response, NORRIS simply told Plaintiff that he would not be getting a raise. Plaintiff was floored by the hostile response especially since this was the first time he had heard back from NORRIS about his complaints of sex-based pay inequality among HR Partners.

50. Plaintiff tried to convince NORRIS to at least investigate his claim of pay inequality since he had the same or greater credentials than some of the female HR Partners that were being paid more than him. NORRIS ended the conversation by telling him that she would give the matter some thought and get back to him.

51. On or about July 2, 2015, not having heard back from NORRIS, Plaintiff contacted her and again complained that the pay inequality between himself and female HR Partners could be construed as a form of sex discrimination. NORRIS told Plaintiff that this was not a conversation to be had over the phone and that she would fly down from Spokane to discuss the issue with Plaintiff privately.

52. On the same day, Plaintiff contacted Serat to complain about sex-based pay inequality among HR Partners at CASCADE. Afterwards, Plaintiff sent a message to Serat and NORRIS requesting that the sex-based pay inequality among HR Partners at CASCADE be resolved. Plaintiff did not receive a response to his request.

53. In or about late July of 2015, Plaintiff learned that CASCADE had hired Heather Meese as an HR Partner at its Spokane plant. Plaintiff found it odd that the open HR Partner position had not been internally posted in accordance with the usual hiring procedure at CASCADE. Almost immediately after being hired, Meese began asking Plaintiff questions about

how to perform her job and appeared very inexperienced.

54. In or about early August of 2015, Plaintiff was praised and told by LOVE that he was doing a great job and that the plant was breaking production records.

55. On August 6, 2015, Plaintiff became increasingly concerned that Meese was not qualified for the HR Partner position because she seemed to not understand some basic HR procedures.  Plaintiff was also stunned to learn that Meese had been hired at an annual salary of $65,000 which was $10,000 more than his salary.

56. Plaintiff complained to Serat that Meese, who had been recently hired, was making $10,000 a year more than him for working in the same position with less experience. Plaintiff told Serat that he believed he had more than comparable qualifications to Meese and therefore that was proof that he was a victim of sex discrimination as to his pay.

57. Later the same day, Plaintiff contacted HOPKINSON and asked him if he was aware that Meese was making $10,000 a year more than he was for the same position. Plaintiff complained of gender based pay inequality.

58. HOPKINSON told Plaintiff that he did not want to be involved in the issue, and asked him to speak directly with NORRIS about it. Plaintiff told HOPKINSON that he had already complained about the pay issue as well as other discriminatory employment practices to no avail.  Plaintiff told HOPKINSON that NORRIS had brushed everything under the rug. Plaintiff then advised HOPKINS of some of the issues at the plant that he had reported to NORRIS and offered to write a detailed account so it could be investigated.  HOPKINSON angrily told Plaintiff that he did not need a list and quickly ended the conversation.

59. Near the end of the work day, Plaintiff sent an email to NORRIS, Serat, and

HOPKINSON stating in part "*Please accept this email as my request to file a formal complaint regarding my compensation. Please advise as to my next steps. Thank you.*" NORRIS responded the same day stating that she would come meet with him next week.

60. Plaintiff took a prearranged day off on or about August 7, 2015. The same day, Plaintiff received an email from LOVE requesting that Plaintiff meet with him on August 10, 2015, and a meeting was ultimately arranged for August 11, 2015.

61. On August 10, 2015, Plaintiff received an email from NORRIS claiming that an investigation was going to be conducted into his complaints.

62. On August 11, 2015, Plaintiff attended a meeting with Serat and was informed that LOVE was also present on speaker phone. LOVE told Plaintiff that the meeting was not to talk about Plaintiff's discrimination complaint, but was to discipline Plaintiff for allegedly disclosing confidential information.

63. Plaintiff had no idea what LOVE was talking about and felt ambushed. LOVE claimed that Plaintiff was "overheard" through his office wall to have had a telephone conversation with his mother on August 6, 2015. Plaintiff was in shock as he had not divulged any confidential information to anyone, including his mother.

64. LOVE then told Plaintiff that he was being placed on paid administrative leave and requested that Plaintiff return all company property to CASCADE. Plaintiff told LOVE that his suspension "*smells of retaliation*." LOVE then quickly ended the conversation.

65. On August 20, 2015, Plaintiff received a termination letter dated August 19, 2015 from CASCADE signed by NORRIS. In the letter NORRIS claimed that Plaintiff was being terminated for violating CASCADE's confidentiality policy because LOVE had allegedly

"overheard" through an office wall Plaintiff disclosing confidential pay information to his mother on the telephone on August 6, 2015.

66.     In further retaliation, CASCADE failed to pay Plaintiff all wages due and owing within the time period required by Oregon law. As of the date of filing this Complaint, Plaintiff is still owed his unpaid accrued PTO.

67.     Plaintiff timely filed a claim with the Oregon Bureau of Labor & Industries (BOLI) and this Complaint is being filed within 90 days of the issuance BOLI's Right-to-Sue letter.

## DAMAGES

68.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered noneconomic damages and requests an award of compensatory damages to be determined by a jury at the time of trial.

69.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic damages in the form of back pay, front pay, loss of benefits, loss of job opportunities and other employment benefits which continue to accrue in the amount of $100,000 or to be determined at the time of trial, together with interest at the statutory rate of 9%, as well as the amount necessary to offset the income tax consequences of such an award pursuant to ORS 659A.885(1) and/or as special damages under common law.

70.     Plaintiff also seeks equitable relief including reinstatement to Plaintiff's former position, or, alternatively, the reasonable value of such reinstatement as front pay, as well as a permanent injunction enjoining Defendants from engaging in any employment practice which discriminates on the basis as alleged in this Complaint.

71. Based on the foregoing, Defendants acted with malice towards Plaintiff and/or an outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety, and/or rights of others, including Plaintiff, therefore Plaintiff seeks an award of punitive damages, as alleged, and discovery of all relevant financial documents from Defendants.

72. Plaintiff also seeks reasonable attorney's fees and costs, including expert witness fees, in an amount to be proven at trial pursuant to ORS 659A.885(1), and/or ORS 20.107 or other applicable statute.

**FIRST CLAIM FOR RELIEF**
Equal Pay Act Violation 29 U.S.C § 206(d)
(Against Defendant CASCADE)

73. Plaintiff restates and incorporates by reference paragraphs 1-67, inclusive.

74. Plaintiff is informed and believes that Defendant CASCADE had an annual dollar volume of receipts in the amount of $500,000 or more in the years 2014 and 2015 respectively.

75. At all material times, Defendant CASCADE was engaged in interstate commerce including selling, installing, and transporting manufactured goods that entered the stream of interstate commerce.

76. Plaintiff performed work that was substantially equal to female employees at Defendant CASCADE's establishment, to wit, Plaintiff was an HR Partner under direct management out of Defendant CASCADE's principal place of business in Spokane, Washington. Defendant's Human Resources Department acted as an integrated operation.

77. Plaintiff and at least one female employee did their jobs under similar working conditions.

78. Defendant CASCADE paid Plaintiff less money than at least one female employee doing substantially equal work.

79. Defendant's violation of the Equal Pay Act was willful and in bad faith.

80. Plaintiff is informed and believes that he was replaced at the Tualatin location by a female who was equally or less qualified for the position than Plaintiff but was at a higher rate of pay than he received.

81. Plaintiff is informed and believes that he replaced at least one predecessor female HR Partner at the Tualatin location who performed substantially equal work at a higher rate of pay than he received.

82. Pursuant 29 U.S.C. § 206(d)(3), Plaintiff requests an award of damages equal to the difference in pay between himself and comparable female employees for the duration of his employment in an amount to be determined at the time of trial.

83. Plaintiff also requests an award of liquidated damages pursuant to 29 U.S.C. § 216(b).

84. Plaintiff also requests an award of reasonable attorney fees and "costs of the action," including, but not limited to, expert witness fees, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
FLSA Retaliation 29 U.S.C. § 215(a)(3)
(Against Defendant CASCADE)

85. Plaintiff restates and incorporates by reference paragraphs 1-67, inclusive.

86. Plaintiff is informed and believes that Defendant CASCADE had an annual dollar volume of receipts in the amount of $500,000 or more in the years 2014 and 2015.

87. At all material times, Defendant CASCADE was engaged in interstate commerce including selling, installing, and transporting manufactured goods that entered the stream of interstate commerce.

88. Plaintiff engaged in protected activity under the FLSA when he complained about unequal pay based on sex to Defendant CASCADE's management as set forth more fully supra.

89. Defendant CASCADE subjected Plaintiff to adverse employment actions, including, but not limited to, falsely accusing Plaintiff of disciplinary issues, suspending, and terminating Plaintiff.

90. Plaintiff's complaint about unequal pay based on sex was a motivating reason for subjecting Plaintiff to these adverse employment actions.

91. Defendant's violation of the FLSA was willful and in bad faith.

92. Plaintiff requests an award of damages, equitable relief, and costs, as alleged in paragraphs 68-72, inclusive, supra.

93. Plaintiff also requests an award of liquidated damages pursuant to 29 U.S.C. § 216(b).

94. Plaintiff also requests an award of reasonable attorney fees and "costs of the action," including, but not limited to, expert witness fees, pursuant to 29 U.S.C. § 216(b).

**THIRD CLAIM FOR RELIEF**
Sex Discrimination – ORS 659A.030(1)(a-b)
(Against Defendant CASCADE)

95. Plaintiff restates and incorporates by reference paragraphs 1-67, inclusive.

96. In perpetrating the actions described in the above paragraphs, Defendant CASCADE, acting through its agents and/or employees, subjected Plaintiff to gender/sex

discrimination in the workplace in that Plaintiff was subjected to disparate treatment, unequal pay in violation of ORS 652.220, and discharged from his employment because of his gender/sex.

97.     In perpetrating the actions described above, Defendant violated *Oregon Revised Statute* 659A.030 *et seq.*, causing Plaintiff to suffer damages.

98.     Plaintiff requests an award of damages, equitable relief, costs, and attorney's fees as alleged in paragraphs 68-72, inclusive, supra.

### FOURTH CLAIM FOR RELIEF
Retaliation for Reporting Unlawful Conduct/Whistleblowing—ORS 659A.199
(Against Defendant CASCADE)

99.     Plaintiff restates and incorporates by reference paragraphs 1-67, inclusive.

100.    In perpetrating the actions described in the above paragraphs, Defendant, acting through its agents and employees, subjected Plaintiff to retaliation for opposing and reporting in good faith information Plaintiff believed to be evidence of violations of state laws, rules, regulations, including, but not limited to: ORS 165.080 (falsifying business records); ORS 659A.030 *et seq.* (discrimination based on sex, race and/or color is an unlawful employment practice); ORS 659A.040 (discrimination against injured workers is an unlawful employment practice); ORS 654.010 (mandating that Oregon employers provide a safe and healthful work environment); ORS 654.022 (mandating the Oregon employers obey and comply with Oregon health and safety regulations); OAR 333-015-0035(2) (employers shall provide a smoke free workplace); and OAR 333-015-0035(3)(a) & (b) (no person shall carry any lighted smoking instrument within 10 feet of an entrance or exit of place of employment); OAR 333-015-0062(1) (smoking prohibited in company vehicles operated or occupied by more than one assigned

employee); OAR 333-015-0078(1)(a)(b)(j) and (o) (employer violations of ICAA); ORS 652.220 (prohibiting discrimination between the sexes in the payment of wages for work of comparable character/skill); ORS 652.010(2) (working persons in a manufacturing establishment more than 10 hours in a day violates public policy); ORS 652.020 (1-2) (no manufacturing establishment employee may work more than 10 hours in any one day); OAR 839-001-0155 (making it unlawful for manufacturing establishment employees to work over 13 hours in any one day and requiring payment of overtime for work over 10 hours in one day); ORS 652.355(a) (prohibiting discrimination against an employee for inquiry about wages); ORS 652.990(1) (violation of ORS 652.020(2) is a Class A violation); ORS 652.990(7) (violation of ORS 652.355 is a Class A misdemeanor); ORS 653.261(1) (payment of overtime required for hours over 40 worked per week); ORS 653.991 (criminalizing wage and hour violations); 29 U.S.C. § 215(a)(3) (prohibiting retaliation for filing a complaint under the Fair Labor Standards Act); and 29 U.S.C § 206(d) (mandating equal pay for the sexes for the same work).

101.   Defendant CASCADE retaliated against Plaintiff by taking adverse employment actions against Plaintiff including, but not limited to, falsely disciplining Plaintiff, suspending, and terminating Plaintiff's employment, in violation of ORS 659A.199, causing Plaintiff to suffer damages.

102.   Plaintiff requests an award of damages, equitable relief, costs, and attorney's fees as alleged in paragraphs 68-72, inclusive, supra.

### FIFTH CLAIM FOR RELIEF
Retaliation for Opposing Unlawful Discrimination (ORS 659A.030(1)(f))
(Against All Defendants)

103.   Plaintiff restates and incorporates by reference paragraphs 1-67, inclusive.

104.  Plaintiff engaged in protected activity when Plaintiff opposed and/or complained about conduct he reasonably believed constituted unlawful practices, as alleged above.

105.  In perpetrating the actions described in the above paragraphs, Defendants violated ORS 659A.030(1)(f) by retaliating against Plaintiff for opposing unlawful discrimination, retaliation, and other unlawful practices.

106.  Defendants, acting directly and/or through their agents/employees, retaliated against Plaintiff in substantial part because of Plaintiff's oppositional conduct by falsely disciplining Plaintiff and by suspending him and terminating his employment causing him to suffer damages in violation of ORS 659A.030(1)(f).

107.  Plaintiff requests an award of damages, equitable relief, costs, and attorney's fees as alleged in paragraphs 68-72, inclusive, supra.

## SIXTH CLAIM FOR RELIEF
Aiding, Abetting or Inciting Retaliation (ORS 659A.030(1)(g))
(Against Defendants LOVE; NORRIS; and HOPKINSON)

108.  Plaintiff restates and incorporates by reference paragraphs 1-67, inclusive.

109.  As set forth in detail above, Defendants LOVE, NORRIS, and HOPKINSON aided, abetted and/or incited unlawful retaliation, harassment, and discrimination against Plaintiff by Defendant CASCADE and each other culminating in the termination of Plaintiff.

110.  Defendants LOVE, NORRIS, and HOPKINSON incited Plaintiff's discharge by Defendant CASCADE. Defendants LOVE, NORRIS, and HOPKINSON did so while knowing that their conduct was unlawful, intending to cause Plaintiff's harm.

111.  Defendants LOVE, NORRIS, and HOPKINSON also aided and/or abetted Defendant CASCADE and each other in the continued retaliation against Plaintiff by failing to

properly investigate Plaintiff's complaints of sex discrimination.

112.   Defendants LOVE, NORRIS, and HOPKINSON violated Oregon Revised Statute 659A.030(1)(g) by aiding, abetting and/or inciting unlawful employment practices, causing Plaintiff damages.

113.   Plaintiff requests an award of damages, equitable relief, costs, and attorney's fees as alleged in paragraphs 68-72, inclusive, supra.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims and issues to the extent allowed under the law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests the following judgments and relief according to proof:

1. Economic damages, as alleged;
2. Non-economic damages, as alleged;
3. Reasonable costs and attorney's fees, as alleged;
4. Reinstatement, if feasible, and a permanent injunction enjoining Defendants from engaging in any employment practice which discriminates on the basis as alleged herein;
5. For prejudgment and post-judgment interest as appropriate and allowed by law as well as the amount necessary to offset the income tax consequences of any award of damages;
6. Pursuant 29 U.S.C. § 206(d)(3), an award of damages equal to the difference in pay between himself and comparable female employees for the duration of his employment, as alleged;
7. For liquidated damages pursuant to 29 USC § 216(b), as alleged;
8. Punitive damages, as alleged; and
9. All such other relief as this Court may deem just and proper.

Dated: December 14, 2016.                    **MITRA LAW GROUP**

*s/Daniel K. Le Roux*
Mitra Shahri, OSB No. 021100
mitra@unlawfultermination.com
Daniel K. Le Roux, OSB No. 085510
dan@unlawfultermination.com
*Attorneys for Plaintiff*